```
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3                        WESTERN DIVISION

 4          THE HON. MARK C. SCARSI, JUDGE PRESIDING

 5

 6   UNITED STATES OF AMERICA,      )
                                    )
 7                    Plaintiff,    )
                                    )
 8        vs.                       ) NO. 22-CR-00321-MCS-1
                                    )
 9   KEITH SHAZAD MALIK,            )
                                    )
10                    Defendant.    )
     _____)
11

12

13           REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                        (SENTENCING)

15                   Los Angeles, California

16
                     Monday, August 21, 2023
17

18

19

20

21

22

23            Katherine Stride, CSR 11773
          Official U.S. District Court Reporter
24                  350 West 1st Street
              Los Angeles, California 90012
25              Email: katscsr@gmail.com
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   APPEARANCES:
 2
 3
 4   FOR THE GOVERNMENT:
                              UNITED STATES ATTORNEY'S OFFICE
 5                            BY:  KEVIN B. REIDY, ESQ.
                              ASSISTANT UNITED STATES ATTORNEY
 6                            1400 United States Courthouse
                              312 N. Spring Street, 12th Floor
 7                            Los Angeles, California 90012
                              (213) 894-2400
 8
 9
10   FOR THE DEFENDANT:       FEDERAL PUBLIC DEFENDER
                              By:  ALEJANDRO J. BARRIENTOS, ESQ.
11                            Deputy Federal Public Defender
                              321 East Second Street
12                            Los Angeles, California 90012
                              (213)894-2854
13
14
15
16
17
18
19
20
21
22
23
24
25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

08:47:52  1            LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 21, 2023
          2                             1:30 P.M.
          3
          4            THE CLERK:  Calling Item No. 2, CR 22-321,
          5    *United States vs. Keith Shazad Malik.*
          6            Counsel, state your appearances please.
          7            MR. REIDY:  Good afternoon, Your Honor.  Kevin
          8    Reidy on behalf of the United States.
          9            THE COURT:  Good afternoon.
         10            MR. BARRIENTOS:  Good afternoon, Your Honor.
         11    Alejandro Barrientos for Mr. Keith Malik, who is present.
         12            THE COURT:  Good afternoon.
         13            Good afternoon, Mr. Malik.  So we're now set for
         14    sentencing.  I've gone through all the papers, all the
         15    papers that were filed.  I looked at the Presentence Report
         16    and the addendum that was filed.  I looked at the
         17    Defendant's objections, and I looked at the Government's
         18    position, and I received a letter from the Defendant that I
         19    considered and all the other papers on file.
         20            Let me ask counsel:  Have you had an opportunity
         21    to review all the papers?
         22            MR. BARRIENTOS:  Your Honor, I'm sorry.  Did you
         23    say a letter from the Defendant?
         24            THE COURT:  Yes.  Yeah, the Defendant sent a
         25    letter to the Court.  His counsel had an opportunity to --

```
15:01:18   1   were -- we're you aware of that?
           2           MR. BARRIENTOS:  I apologize, Your Honor.  I was
           3   not, and I would like an opportunity to review it.
           4           THE COURT:  Okay.  Let me ask counsel:  Do you
           5   have any concerns about the ability of your client to
           6   understand the proceedings here against him?
           7           MR. BARRIENTOS:  Your Honor, I've looked into
           8   this, I've consulted with folks, and I do not doubt his
           9   ability to understand.
          10           THE COURT:  Okay.
          11
          12                   (Pause in proceedings)
          13
          14           THE COURT:  Let me ask the Government while
          15   counsel's reviewing that letter:  Are there any victims that
          16   wish to be heard at the proceeding today?
          17           MR. REIDY:  No, Your Honor.
          18           THE COURT:  And have the victims been notified of
          19   the proceedings?
          20           MR. REIDY:  Yes, Your Honor.
          21           THE COURT:  And does the Government, other than
          22   what's already been submitted, have any objections to any of
          23   the -- any objections to the Presentence Report or anything
          24   that was provided by Probation or Pretrial Services?
          25           MR. REIDY:  No, Your Honor.
```

| | | |
|---|---|---|
| 15:02:25 | 1 | THE COURT: Thank you. |
| | 2 | MR. BARRIENTOS: Thank you, Your Honor. |
| | 3 | THE COURT: And, Counsel, you've looked at the |
| | 4 | proposed conditions of supervised release, and as I |
| | 5 | understand, you have no objections to those proposed |
| | 6 | conditions; correct? |
| | 7 | MR. BARRIENTOS: That's correct. |
| | 8 | THE COURT: Okay. Let me ask Mr. Malik: Have you |
| | 9 | had an opportunity to review all the papers that have been |
| | 10 | filed in the case? |
| | 11 | THE DEFENDANT: Yes. |
| | 12 | THE COURT: Do you need any more time to discuss |
| | 13 | them with your attorney? |
| | 14 | THE DEFENDANT: No. |
| | 15 | THE COURT: Do you have any more questions about |
| | 16 | them? |
| | 17 | THE DEFENDANT: No. |
| | 18 | THE COURT: Do you understand the nature of the |
| | 19 | proceedings against you, and do you understand what we're |
| | 20 | doing here today? |
| | 21 | THE DEFENDANT: Yes. |
| | 22 | THE COURT: Do you have any reason to believe |
| | 23 | you're not competent to proceed? |
| | 24 | THE DEFENDANT: I am competent to proceed. |
| | 25 | THE COURT: Okay. Let me ask counsel: Other than |

| | | |
|---|---|---|
| 15:04:27 | 1 | what's been filed, do you have anything else you want to |
| | 2 | present on sentencing? |
| | 3 | MR. BARRIENTOS: Your Honor, just briefly on the |
| | 4 | recommendation of the Probation Office. |
| | 5 | THE COURT: Uh-huh. |
| | 6 | MR. BARRIENTOS: So one thing I wanted to point |
| | 7 | out to the Court, which I don't think I fully brought out in |
| | 8 | the supplemental sentencing position is, in the _Bennington_ |
| | 9 | case, which I think involved really substantial similar |
| | 10 | conduct, you can see from the Government's sentencing |
| | 11 | position that's Exhibit B to the supplemental position and |
| | 12 | on page -- page -- excuse me -- page 2 of that, the |
| | 13 | Government describes _Bennington's_ actions over the years |
| | 14 | and, in particular, threats and unwanted messages to a |
| | 15 | victim who was 16 years old, and those continued from 2013 |
| | 16 | to 2019.  And so I think this case really shows that |
| | 17 | there -- if the Court is going to go, you know, much above |
| | 18 | the guidelines, there is going to be a disparate treatment |
| | 19 | of Mr. Malik, an individual who conducted, essentially, the |
| | 20 | same acts who had almost identical circumstances in terms of |
| | 21 | their mental health issues, their homelessness, and their |
| | 22 | past events, and I really just -- to me, I don't understand |
| | 23 | why Probation is treating these people in different ways.  I |
| | 24 | know they've said in their addendum that we can't know about |
| | 25 | the, I think it was, circumstances of each individual, but I |

15:06:04  1  think judging, based on the papers that were filed in the
        2  *Bennington* case and in this case, we can see that they are
        3  substantially similar, and I point out, too, if the worry is
        4  that there's no assurances about what Mr. Malik is going to
        5  be doing going forward, I think there's agreement here
        6  basically on all sides that he's now in a much better place
        7  than he was previously.  He has a home in Kansas.  He
        8  inherited some money from after his mother's passing.  So he
        9  has the ability to go back home and take care of himself.
       10  He's reconnected with his brothers, who were not able to be
       11  here today because they live in different states, in
       12  Illinois and in Washington.
       13          And so, Your Honor, we would object to any -- any
       14  sentence that would go above the guidelines, which is
       15  substantively unreasonable, and we think -- and I'm not
       16  going to beat this into the ground, but I do think, based on
       17  the recommendation letter that Probation wrote, that it
       18  really is based on a desire to have Mr. Malik evaluated and
       19  treated in B.O.P. custody as opposed to while supervised
       20  release, and I don't think that the B.O.P. necessarily has
       21  the best track record of treating individuals with these
       22  kinds of -- of conditions, and I think Mr. Malik has
       23  indicated to the Court already, in coming in and -- and
       24  affirming his agreement to his plea deal and by not
       25  objecting to the conditions of supervised release, that he

| | |
|---|---|
| 15:07:38   1 | is committed to moving forward in a way that is productive, |
| 2 | in a way that will take advantage of the resources |
| 3 | identified by the social workers in my office that are |
| 4 | available to him in Kansas where he can go home and |
| 5 | hopefully get things back on the right track with the help |
| 6 | of his brothers. |
| 7 | THE COURT:  Thank you, Counsel. |
| 8 | Mr. Malik, do you want to address the Court? |
| 9 | THE DEFENDANT:  Sure.  I would just like to excuse |
| 10 | me -- so I'm very sorry that I expressed such awful |
| 11 | sentiments via e-mail, and I do not feel good about |
| 12 | expressing those sentiments and wish that I hadn't, and I |
| 13 | think there's a lot for me in Kansas.  I would very much |
| 14 | like to go home and successfully complete probation and the |
| 15 | mental health program.  I don't foresee there being an |
| 16 | issue.  I have my brothers available to me now.  I haven't |
| 17 | been in touch with them for a while and I have stable |
| 18 | housing.  So I think that rehabilitation in Kansas would |
| 19 | definitely suit me and the state of California. |
| 20 | THE COURT:  Thank you, Mr. Malik. |
| 21 | So I've gone through the papers and spent some |
| 22 | time considering the arguments raised.  I -- I looked at the |
| 23 | case counsel cited, and, yeah, there was, essentially, an |
| 24 | objection to potentially unwarranted sentence disparity, and |
| 25 | that's certainly something the Court looks at in trying to, |

15:09:35  you know, come up with a -- with a -- an appropriate sentence. We try to eliminate unwarranted sentence disparities, but as you know, it's not on a case-by-case basis necessarily. So you really can't take one case, and it's not necessarily binding precedent on the Court with respect to that sentence, but I try to consider that in coming up with an -- with an appropriate sentence.

I looked at the revised Presentence Report, and it does not appear to me that the -- that Probation and Pretrial Services was attempting to create a longer sentence to allow Mr. Malik to have treatment by the Bureau of Prisons, and to the extent that suggestion is there, the Court's not -- not basing its decision on that decision at all.

Here, I've gone through and looked at the guidelines. The guidelines are obviously the starting point, and looking at the November 1st, 2021, edition of the guidelines: The total Offense Level of 12, Criminal History Category of 3, the guideline range is 14 to 21 months, and the range of supervised release is one to three years. There's a guideline fine range of 5,500 to 55,000 and a Special Assessment to the victims crime fund for $100.

I thought I was going to make an individualized determination here based on the facts of this case and the nature and circumstances of the Defendant, of the conduct

| | |
|---|---|
| 15:11:20 | 1  I'm looking at the need for the sentence to reflect the |
| | 2  seriousness of the offense, to promote respect for the law, |
| | 3  to provide just punishment, to afford adequate deterrence |
| | 4  for criminal conduct, to protect the public from further |
| | 5  crimes of the Defendant, and also one of the factors in |
| | 6  3553(a) is to provide the Defendant with needed |
| | 7  educational/vocational training, medical care, and those |
| | 8  sorts of things; although, as I say, the Court's decision is |
| | 9  not -- the Court's not, in any way, taking into account -- |
| | 10 trying to fashion a sentence that would allow the Defendant |
| | 11 to have enough time in custody to -- to seek treatment. |
| | 12 That's not the basis of the Court's decision -- looking at |
| | 13 the kinds of sentences available and the sentencing range |
| | 14 established for the offense set forth in the sentencing |
| | 15 guidelines and the statute and the policy statements of the |
| | 16 United States Sentencing Commission as provided. |
| | 17           So the Defendant offers several factors for a more |
| | 18 lenient sentence:  The Defendant suffered tragic losses, |
| | 19 difficulties during childhood, and is consistently struggle |
| | 20 with mental health issues.  The Defendant's history and |
| | 21 characteristics suggest that further confinement may |
| | 22 undermine the goals of sentencing insofar as support for his |
| | 23 mental health and social stability may be more effectively |
| | 24 obtained outside of custody. |
| | 25           That being said, there are several factors that |

| | |
|---|---|
| 15:12:44 1 | weigh for a stricter sentence.  Here, the nature and |
| 2 | circumstances of the offense are serious.  The defendants |
| 3 | sent threatening communications to the victim and her family |
| 4 | causing them mental anguish and stress.  The conduct |
| 5 | underlying this defense -- this offense came several years |
| 6 | after there was a restraining order issued.  So the issue |
| 7 | that the Court has with respect to protecting the public and |
| 8 | protecting, specifically, the victim here, is that this |
| 9 | conduct happened when there was a restraining order in |
| 10 | place.  So there was already the Court process in -- in |
| 11 | place here that the Defendant ignored. |
| 12 | The -- the letter the victim described, describing |
| 13 | the Defendant's conduct has had in her life, it was |
| 14 | harrowing.  The Defendant's history and characteristics |
| 15 | can't fully explain or excuse his decision to engage in a |
| 16 | campaign of threats and harassment against the victim that |
| 17 | gave rise to the offense.  A substantial factor in |
| 18 | aggravation is the continued disrespect for the law.  In the |
| 19 | e-mails to the victim, the Defendant acknowledged that he |
| 20 | was aware of the restraining order.  So this, you know, |
| 21 | wasn't a confusion thing.  This wasn't -- this wasn't a |
| 22 | mistake.  Despite being aware of the restraining order, he |
| 23 | continued to harass the victim via e-mail and over years. |
| 24 | In fact, even after immediately of receiving the restraining |
| 25 | order, the Defendant began his -- his campaign of harassing |

15:14:22  1  the victim again.
2  Given the extent and longevity of the behavior
3  towards the victim and the lack of deterrence that the Court
4  orders have exhibited so far, a truly meaningful custodial
5  sentence is needed to impose upon the Defendant, the need to
6  respect the law, to protect the community from further
7  crimes, and to deter the Defendant from further criminal
8  conduct.
9  So this is an instance where the demonstrated
10  ignoring of the prior restraining order causes the Court to
11  believe that -- that there's not -- from a safety
12  perspective, the Court doesn't have the confidence that the
13  Defendant will -- will respect an order here if not in
14  custody.  So a meaningful custodial sentence is needed to
15  impress upon the Defendant the need to respect the law, to
16  protect the community from further crimes committed by the
17  Defendant, and to deter the Defendant from further criminal
18  conduct.  The nature of circumstances of the offense, the
19  Defendant's lack of respect for the law, and the need to
20  adequately deter the Defendant from future criminal conduct,
21  all support an upward variance.  The seriousness of the
22  offense is inadequately captured by the sentencing
23  guidelines.  The frequency, type of threats, and extension
24  of threats to co-workers and family have escalated over
25  time.  The violent and sexual nature of the threats, the

15:15:46   1   persistent and consistent harassment has spanned more than a
           2   decade, and the Defendant's determination to carry out the
           3   threatening conduct and defiance outweighs his mitigating
           4   history and characteristics.
           5           I'll now state the sentence, but counsel will have
           6   a final chance to make legal objections before the sentence
           7   is imposed.
           8           Do counsel know of any reasons, other than those
           9   stated, why a sentence should not now be imposed?
          10           MR. REIDY:  No, Your Honor.
          11           MR. BARRIENTOS:  No, Your Honor.
          12           THE COURT:  Okay.  I find the following sentence
          13   is reasonable and is sufficient but is no greater than
          14   necessary to comply with the purposes stated in 18, U.S.C.,
          15   Section 3553(a):  It's ordered that the Defendant shall pay
          16   to the United States a Special Assessment of $100, which is
          17   due immediately.  Any unpaid balance shall be due during the
          18   period of imprisonment at a rate of not less than $25 per
          19   quarter and pursuant to the Bureau of Prisons' Inmate
          20   Financial Responsibility Program.
          21           Pursuant to Guideline Section 5E1.2(a), all fines
          22   are waived as the Court finds that the Defendant has
          23   established that he is unable to pay and is not likely to
          24   become able to pay a fine.
          25           Pursuant to the Sentencing Reform Act of 1984 it

15:16:52  1  is the judgment of the Court that the Defendant, Keith
2  Shazad Malik, is hereby committed on Count 2 of the
3  Indictment to the custody of the Bureau of Prisons for a
4  term of 60 months.
5          The Court recommends that the Bureau of Prisons
6  conduct a mental health evaluation of the Defendant and
7  provide all necessary treatment.
8          Upon release from imprisonment, the Defendant
9  shall be placed on supervised release for a term of three
10 years under the terms and conditions previously provided to
11 the Defendant, which the Defendant has indicated there is no
12 objection to.
13         The Court authorizes the Probation and Pretrial
14 Services Office to disclose the Presentence Report to the
15 substance abuse treatment provider to facilitate the
16 Defendant's treatment for narcotic addiction or drug
17 dependency.  Further redisclosure of the Presentence Report
18 by the treatment provider is prohibited without the consent
19 of the sentencing judge.
20         The Court authorizes the Probation Officer to
21 disclose the Presentence Report and any previous mental
22 health evaluations or reports to the treatment provider.
23 The treatment provider may provide information excluding the
24 Presentence Report to state or local social service agencies
25 such as the state of California, Department of Social

| | |
|---|---|
| 15:17:59 | |

1  Service for the purpose of the client's rehabilitation.

2  So that's the sentence.

3  You've got the ability to repeal the sentence, and

4  with few exceptions, a Notice of Appeal must be filed within

5  14 days; do you understand that?

6  THE DEFENDANT: Yes. Did you say 60 or 16?

7  THE COURT: Six, zero. So the term of custody is

8  five years, which is -- which is the maximum for this, and I

9  do hope that, at some point during that time, you have the

10  help you need, and so you're able to -- when you're through

11  with your custodial sentence --

12  THE DEFENDANT: You do understand all of the --

13

14  (Mr. Barrientos and the Defendant confer)

15

16  THE DEFENDANT: I understand. I would just like to

17  point out that my brother was killed. He was assassinated.

18  In 1989, and the U.S. courts ruled against my family, which

19  is -- that's kind of a gross violation of any rights, which

20  I've ever have.

21

22  (Mr. Barrientos and the Defendant confer)

23

24  THE DEFENDANT: I just wanted to be honest to make

25  sure that was known, and then I was slipped arsenic when I

```
15:19:32   1  was 19.  I was unable to sue the state of Utah.
           2        (Mr. Barrientos and the Defendant confer)
           3
           4        THE DEFENDANT:  And, yeah, I mean, I understand.
           5  I just also want to point out that I dodged an I.U.D., a
           6  bomb, when I was 25 on I-76 and called 911 immediately and
           7  was hung up on both by L.A.P.D. and the FBI.  So there's --
           8  there's been a long history of violence against my person,
           9  which I believe this Court just condoned, and I just --
          10
          11        (Mr. Barrientos and the Defendant confer)
          12        THE DEFENDANT:  Yeah, I'm just asking for
          13  leniency.  I mean --
          14        THE COURT:  Okay.  Well, I -- I -- to be clear,
          15  Mr. Malik, this sentence was not based on any of the -- on
          16  any of the materials you just mentioned, but I encourage you
          17  to talk to your counsel, and to the extent there's -- you
          18  feel there's an appeal that's appropriate, work with counsel
          19  to make that happen, and if the Court could assist in that
          20  process in any way, please let the Court know.
          21        And, Counsel, we had a discussion at the beginning
          22  about the Defendant's ability to understand the proceedings
          23  here against him.  If -- if there's another view on that,
          24  please, you know, bring it up with the Court at an
          25  appropriate time.
```

| | | |
|---|---|---|
| 15:21:23 | 1 | MR. BARRIENTOS:  Thank you, Your Honor. |
| | 2 | THE COURT:  Okay.  Thank you. |
| | 3 | MR. REIDY:  Your Honor, I apologize. |
| | 4 | THE COURT:  Yeah.  Sorry. |
| | 5 | MR. REIDY:  We just move to remove the remaining |
| | 6 | counts. |
| | 7 | THE COURT:  The remaining counts are dismissed. |
| | 8 | MR. REIDY:  Thank you. |
| | 9 | THE COURT:  Thank you, Counsel. |
| | 10 | |
| | 11 | (Proceedings concluded) |
| | 12 | --oOo-- |

15:21:40  1  CERTIFICATE

2
3
4       I hereby certify that pursuant to Section 753,
5  Title 28, United States Code, the foregoing is a true and
6  correct transcript of the stenographically reported
7  proceedings held in the above-entitled matter and that the
8  transcript page format is in conformance with the
9  regulations of the Judicial Conference of the United States.
10
11 Date:  October 23, 2023
12
13
14                    /s/Katherine M. Stride
15                    KATHERINE STRIDE, COURT REPORTER
                      CSR NO. 11773
16
17
18
19
20
21
22
23
24
25